Good morning everyone. The first case this morning is number 2010-7136, National Organization of Veterans Against the Veterans Administration. And you all have divided it up. Now you are Mr. Unger. Proceed. May it please the Court, my name is Sean Unger. I represent NBLSP, Vietnam Veterans of America, the Wounded Warrior Project, and Veterans of Modern Warfare. In my four minutes, I will be addressing why the VA Examiner Rule fails the statutory mandates. Mr. Tennant will then be addressing why the VA Examiner Rule fails the arbitrary and capricious standard. And Mr. Horan will then address the arguments raised by PVA. Before turning to the statutes, three facts frame this discussion. First, PTSD is horrific. It is a terribly debilitating disease that affects daily functioning. Second, PTSD is on the rise. According to one recent study, 300,000 soldiers returning from Iraq and Afghanistan suffer from PTSD. Third, modern war is changing. In many cases, only the returning soldiers know of the terror they've seen. Only the returning soldier can provide the corroboration for the service connection for PTSD. It is against this backdrop that the VA liberalized the standard for service connection. Can I ask you a question? Sure. Of course I can. What is it exactly that you want us to do here? I mean, do we have the authority to rewrite this regulation or to tweak it? Or is it simply you're asking us to disallow it and send them back to the drawing board? I think it's the latter, Your Honor. My clients recognize that the VA has the authority to do the rulemaking. But we would ask that the remand issue an order that the new rule be consistent with the statutory mandates. In other words, the VA examiner rule clearly fails the statutory mandates. And your remand order would ask that the new rule be made consistent with the statute. But don't you risk the possibility that on remand that the VA will simply decide not to loosen the standards for establishing the service connection? I suppose that is a risk, Your Honor. But the VA has recognized in the liberalization that there's a problem. The old standard isn't getting the veterans their PTSD benefits as quickly as necessary. And modern war is changing. So we think that there's a recognition across the veterans community that the standard needs to change. And so on remand, I would assume that the VA would take that into consideration and come with a rule. So you're willing to take that risk? Is that what you're saying? My clients are willing to take that risk, Your Honor. What is the problem that you have with the standard? Is it that it doesn't go far enough in its liberalization? Or is it that you want there to have a broader scope in its application with respect to private doctors, et cetera? Do you have a problem with the actual standard itself? Or do you want it to apply broadly to more to the medical community as a large? I think the problem with the standard is that it doesn't comply with the statutory mandates. Private doctors can give the same service corroboration. Private doctors can confirm that there is a PTSD diagnosis that connects to the in-service stressor and that event occurred. So I think that the problem with the standard is it doesn't comply with 1154 that says due consideration should be given to private medical testimony. And it doesn't comply with 5107 that has a shall language and doesn't comply with 5125. Doesn't the VA doctors have greater access to medical information and files and to the soldiers themselves? In many cases, no, Your Honor. In many cases, that's the exact opposite. Private doctors have the long-term relationship with returning veterans, and private doctors have the ability to get the information more so than veterans' doctors. Indeed, there's been studies shown that many veterans' doctors only have 20 minutes to perform the exams. And so no is the short answer to the question. Private doctors often have equal or greater access to the information. But the VA says that they are, in fact, interpreting the regulation as you requested, that they are not eliminating the information, the results of studies of private doctors, that all they're doing is saying also we'd like to have our doctors get in the act. And your position, I gather, is that the objective reading of the regulation is that it isn't quite that liberal. Is that right? I see my time is up, Your Honor, if I may answer. Please answer the question. I think you're right, Your Honor, that our interpretation is that the reading isn't that liberal. But there's a second step to it as well, which is case law recognizes the VA cannot ask for an examination to gather information against a veteran. If a private doctor provides competent medical testimony that is sufficient, there isn't a need for a VA examination. That was the purpose of 5125 when it was passed, and it's consistent with the legislative history. So the VA's position is inconsistent with the case law on that. But the overall, as they point out, the overall statute, the VA can always seek and request an examination by a VA physician no matter what else is in the record. They can ask for an examination, Your Honor, only if there's a deficiency with the private medical testimony that's given. That's what 5125 was there. And as case law Mariano confirms, they can't ask to have an examination purely for gathering negative evidence. There has to be a deficiency in the private medical evidence that's offered. Okay. Now let's see who is next. Mr. Tennant. Thank you, Your Honor. Good morning. David Tennant on behalf of OVA. I'd like to focus my comments on what the new rule, as it reads, does in the way of creating really undesirable, unworkable, and irrational outcomes, and in two particular contexts. One is where you have- Why is it irrational to say that you need an examination by a VA physician? If I could just get to the particular context in which my prefatory comment was directed, one is where you have a single doctor who happens to wear two hats. One is he's a VA examiner. The other is he runs a private practice. Under the express reading of the terms of the new regulation, F3, that doctor's opinion is perfectly competent and acceptable to the VA if he's wearing his VA hat. But if he's across the street in his private office and offering the same opinion, it's unacceptable. The government says in response, well, of course, we would actually take his private hat opinion because we already know he's reliable. Of course, that's not in the regulation. What the regulation says is you have this strict divide. But only for these limited circumstances, correct? It doesn't change the practices with respect to instances where there is evidence or corroboration of the in-service stressor, correct? That's correct, Your Honor. Okay. And then the other circumstance in which you can kind of understand the mischief and what I think is unworkable, irrational in terms of an outcome is you have comorbid conditions. That is, PTSD is a psychiatric disorder often being diagnosed in connection with other disorders of a psychiatric nature and in particular other related anxiety disorders. And if you are talking about a rule that says, well, this particular doctor under the general principles of the regulation, F, can say as to the stressor that created the, let's say, an aversion anxiety, yes, I'm relying upon the veteran's statements to me that this stressor occurred, that it's credible, and that it's of a sufficient character to create the aversion anxiety. He's allowed to do that, or she, the examining doctor, the private doctor. But under the rule, if he's talking about the same stressor, the same medical record, same veteran, the same history, same medical files, same claims files, same military service records, and is saying for the PTSD, I think that stressor is sufficient, it caused the PTSD, I credit the testimony, that's unacceptable. So you have a splitting of hairs that's just completely irrational and unworkable in the real practice where the rubber meets the road of the doctor who's trying to actually provide the services to the veteran that are appropriate. That is to look at him as a whole and say, this is a guy or woman who in service had a horrific event, and it's credible, and as a competent medical either board-certified psychiatrist or psychologist, I'm able to provide that competent testimony. Is it more difficult for a private practitioner to look at the veteran as a whole, given that they don't have access to the claims file? They don't have access to all of the information, which the VA is obligated in many instances to keep confidential. Two things in response to that. The study by the VA showed that in half the cases, they actually didn't have access to the claims file. Claims file is actually overrated in what's in it. And if you're talking about the military service records, which are really the critical things for determining PTSD, the military service records are easily obtained by the veteran. It's just a form of request that he can send to any doctor, whether it's at the VA or private practice. So he would have the right to release any confidentiality obligation? No, I mean, the veteran has no issue at all in terms of being able to direct the military service records. That's what I said. Right, right. Okay. And then just in terms of going back to what the Secretary has attempted to offer in the way of justifications, it's really their say-so that we are more qualified, we're uniquely qualified. But it's really, it's not an apples-to-apples comparison or even an apples-to-orange. It's just an apple. It's an apple saying I'm better than everything else because they don't have any comparative data. They have no statistics. They have nothing to quantify or do any type of qualitative analysis that would say, our doctors are actually doing this work better than the private doctors. Because the standard that we apply is so differential, all we'd have to find is that one of their asserted rationale is sufficient. Isn't that correct? That's correct. So even if we accept your proposition that we don't believe that it's rational that one doctor is more qualified than another, if we find that there might be other reasons that they've articulated, that would still be enough to support what the VA did. We understand it's a deferential review, and if there is sufficient articulation and grounds by the Secretary, which we don't believe there is, then, yes, that would be in a position to support it.  The task for the court is to look at the facts considered by the Secretary and what factual findings were made by the Secretary and whether there's a logical connection between the facts as found and the choice that the Secretary made. And we say there isn't any connection there because there are no facts presented. There are no factual findings. These are conclusory statements begging for some type of objective, quantitative, qualitative analysis to say we're better than private docs, when, in fact, you have the Mental Health America amici brief explaining in detail why they could never do that, because, in fact, you have all these board-certified psychologists and psychiatrists who have been doing this work, providing opinions for decades. Now, I should interrupt. Do you want to yield to your colleague or do you want to move this forward? No, I see I'm over, so yes, thank you. Mr. Horne. Good morning, Judge Newman. May it please this Court. The VA amended their regulation and added terms to the second sentence of 3.304F3 that are contrary to the terms that are contained within the Diagnostic and Statistical Manual of Mental Disorders. Under the DSM, an individual must be exposed to a traumatic event, and the response to that traumatic event must be intense fear, helplessness, and horror. VA has adopted the DSM as the governing manual for diagnosing all forms of mental disorders under 38 CFR 4.125. But even if the reg appears to not recite every aspect of the DSM-IV, isn't the fact that the VA regulations otherwise require compliance with DSM-IV sufficient? There are other regulations that say that, Your Honor, which is one of the problems by adding terms to this regulation. Basically, the VA has, in effect, created two different regimes for diagnosing post-traumatic stress disorder. Under 3.304F1, F2, F4, and F5, the DSM is the governing manual. It's only under F3 that the VA is using these terms. And the problem here is that even though the VA describes this regulation as a liberalization, the addition of these terms can result in this kind of event. But wouldn't it be fair to interpret the regulation as consistent with DSM-IV since that's been VA policy all along? I mean, the language isn't, it's not so clear that they intend to deviate. You're saying it's just not phrased exactly the same way. Is that right? Well, Your Honor, the VA justified the addition of these terms in their basis and purpose statement by saying these terms existed in the DSM. But the language that the VA quoted from came from Diagnostic Criterion B, and that refers to re-experience a traumatic event. It has nothing to do at all with the response that the veteran experiences at the time of the traumatic event. But the advantage that I gather was actually intended to be accomplished through all of this had to do more with the proof and the evidence of the traumatic event rather than how it was analyzed. And I think you're right about that, Your Honor, and that's actually one of the problems here, is the whole point of the regulation was how can VA find evidence that could be used to corroborate a veteran's claim to stressor? Now, when the veteran goes to a VA psychiatrist, the psychiatrist is going to evaluate the veteran under the DSM-IV. And the psychiatrist writes down stressor adequate. The veteran had intense fear, helplessness, or horror. Now the case comes to the VA adjudicator, and if the VA adjudicator pays attention to the regulation, the adjudicator will say, well, the doctor didn't say he had a psychological or psychophysiological fear, helplessness, or horror. And that could be a basis for the denial of service connection. Now, if the VA says the regulation is consistent with the proper thing PVA recommends would be to amend the regulation to make it clear that it's the DSM that controls and not these two terms, which, in fact, the VA never described. Would that solve the problem in the veterans, in all of your view? Yes, Your Honor, it would. That sort of amendment? It would just solve that particular problem. In what way? What would happen? In a practical sense, what would happen that would solve the problem? Well, we would go back to the DSM being the manual that the VA uses to diagnose all forms of mental disorders, including post-traumatic stress disorder. Does that mean that there would be better care for more veterans? I believe that's to be the case, Your Honor. I think that's what would happen. Did you submit evidence in that regard during the ruling process? Not yet, Your Honor, because the reason is the VA just adopted the regulation, so a lot of these cases have not been adjudicated. And I've checked to see if I could actually find VA guidance documents where they describe the meaning of psychological and psychological fear. They haven't issued any guidance yet to their physicians. But the addition of new words in the regulation when the other four subsections under F relate to the DSM-IV indicates VA intends to treat F-3 veterans differently. I see my time is up, Your Honor. It is, but we'll save some rebuttal time, however you've divided it up. And let's hear from the VA. Mr. Olson. Thank you, Your Honor. May it please the Court. VA promulgated Section 3.304 F-3, pursuant to its general rulemaking power provided to you in 38 U.S.C. Section 501A, which allows the VA to prescribe regulations as to the nature and extent of evidence. That's not in dispute, is it? I'm sorry? That's not an issue, is it? It is not, Your Honor, but it's the basis, and it defines why this regulation is rational and why it doesn't conflict with other statutes, because this is the authority under which it was rendered, and the sole purpose of this regulation was to relax the requirements of Section 3.304 F. Can we begin where your opponents ended with the DSM-IV? Yes. Why, if the regulations have historically required application of DSM-IV, and if all the medical professionals, including those I assume the VA hired, are trained under DSM-IV, why would you change the language? We're not changing the language. It's a pure misconstruction. Under the VA regulations for PTSD, whether it be Section 3.304 F generally under 1234 or 5, the VA regs under 38 CFR Section 4.125A require that the diagnosis of PTSD comply with the DSM-III. Exactly, but this appears to say that there's a different standard for these particular veterans who want to take advantage of the ability to not have corroboration. Your Honor, that is the misperception that the petitioners have. Why didn't you just use the same language you used in every other reg? Because we're not defining what PTSD is. If you look at the regulation, the sole purpose of this definition is to define the term veterans' fear of hostile military or terrorist activity. It's not to define PTSD. It really has nothing to do with defining PTSD. It simply says, the regulation says these are- But that language is only relevant because it relates to the diagnosis, right? It's relevant, yes and no. It's relevant because the F3 only applies under certain circumstances, and those circumstances are when the veteran is making a claim of a stressor related to the veteran's fear of hostile military or terrorist activity. The VA- So you're saying that not only do they have to meet the DSM-IV, but there's an additional requirement that you want these particular veterans to be satisfied? It's not a requirement at all. It simply says when this F3 is applicable. If you look at F1, F2, and F4, they're self-defining. One applies-These are all shortcuts, by the way. F2, F3, they're all shortcuts. F1 applies when post-traumatic stress disorder is diagnosed in service. F2 applies when the stressor relates to combat. F4 applies when the stressor relates when you're a prisoner of war. They're self-defining. There's no need for a definition. This regulation only applies when the stressor is claimed to be a stressor related to the fear of hostile military or terrorist activity. It's the only one of those four that in any way involves the symptoms caused by the stressor. So all VA is doing there is defining what that term means so that the adjudicator will know when this regulation even applies because if the stressor that's being alleged is not related to fear of a hostile military or terrorist activity, then the regulation doesn't apply. So that's all it's trying to do. It's not trying to define the elements of pressure. So why didn't you just say intense fear of hostile military activity instead of using these other phrases? It could have done that. And I would also point out it doesn't have the word intense either, which makes it less stringent than the DSM-IV. And as is explained in the final rulemaking, because they're not trying to redefine or use any definition for PTSD, they're simply trying to give an understanding as to when this applies. They use the words psychophysiological or psychophysiological, which really just means nothing more other than physical or mental state of fear. So it's just trying to describe when this applies. And it's the only one of these four that the applicability of the regulation is defined in terms of the symptom. That's all it is. Counsel, I'm concerned more with the determination that the secretary made not to extend the new rule to all physicians, that are all qualified physicians. And are you saying that let's say that a doctor that's trained at Harvard Medical School is practicing and that his opinion is not valuable or worth as much in cases such as this as a VA examiner in Roanoke, Virginia? If I could, Your Honor, let me start with the explanation that because this is a liberalizing regulation, there are three criteria that have to be met in order to have PTSD for people claiming this type. The first is you have to have PTSD. The private medical examination nurse opinion will be considered for that. And if he says there's PTSD, you'd meet the first element. The second one is there has to be a connection between the alleged stressor and the veteran's symptoms. The private practitioner's opinion will be considered for that and will meet that criteria. The third criteria requires corroboration of the stressor. If there's corroboration for the stressor, you don't even get the F3. All F3 is doing is providing a substitute for that third element in F. And it's not saying it's – and when I say substitute, it's not really a substitute. It's basically another bite at the apple because if you have that corroboration. I don't understand what the point is, but that's – I don't think you're answering Judge Ray's question. I was getting there. Yeah, no, I'm just – so that's the foundation. So now we're in this situation. So what VA has said is that a VA doctor has to confirm these two elements. It cannot be a private physician. So the question becomes is that rational? I mean certainly there are doctors, as you describe, at Harvard who are qualified and who the VA would consider to have equivalent experience as they do, as the VA doctors do with all the training they have. There's 210,000 doctors out there, Your Honor, who could potentially do this. And VA made a rational determination here. Why do you say rational? What is it that makes the VA doctors more qualified? It's not that they're more qualified. It's they're uniquely qualified. And I would ask Your Honor – What about the study that your opponent refers to where – that the average VA doctor spends 20 minutes with a veteran when diagnosing PTSD? Well, the requirements say three or four hours in the clinician. I don't know any average of 20 minutes. But we've heard argument from your opponents and in the briefing that they don't spend that amount of time. And, in fact, that some of the medical files compiled by the doctors are rather scant. Well, when the study was done that's showing, for example, that Your Honor mentioned that only 50% or 60% of the files actually had claims files that were reviewed, that was the impetus for improving that. So the whole program that the CPEP, the Compensation and Pension Examination – That's the impetus. Wouldn't it have improved it more if you would have broadened it and allowed all qualified doctors to provide these type of opinions? No, Your Honor. And the reason for that is I would direct your attention to page 684 of the Joint Appendix, which is in VA Directive 2008-005. And in there it describes really what boils down to the basis for why the VA wants its own physicians and its contract physicians to be able to provide this alternative method for basically corroborating the stressor. And if you look on page 684 there, it talks about the training program and the CPEP certification program. And it says specifically there at the bottom of the page under C and E on 684, Psychiatrists and clinical psychologists performing initial post-traumatic stress disorder PTSD examinations must complete the initial PTSD examination module and successfully complete the post-test. And that's under C. And under E basically says the same thing with respect to not the initial examinations but the review examinations. But what we keep hearing and what we're told is that – and this has always been in the rules – that it isn't working quite that well and that we are limiting the scope of what's available to the veteran to legitimately and fairly put forward actually what the problems are. First of all, Your Honor, this is actually not a document that came into being until 2008. This is a relatively new program of certification and it's directed toward the forensic element of these examinations. And remember, this F3, again, is an alternative pathway. It's forensic in nature. And what do we mean by forensic in that it is geared not toward the diagnosis of PTSD. That's an element that's taken care of in F. This is a separate element for service connection, which is a legal term for PTSD. And this is teaching these examiners where basically the VA is saying, we are going to basically allow the examiner to provide the corroboration under F. And we want forensic training to do that. But the regulation liberalizes that aspect and yet appears, on the other hand, to take away that which it gives. Your Honor, it doesn't because there's 210,000 practitioners out there, and there are certainly people – and the amnesia here – Well, it's a big country and there are millions of veterans as well. There are certainly doctors who are qualified and there are certainly doctors who are not out there. And VA is really concerned with the doctors who are not because this, again, is corroborating the stressor. And VA could have – let's be quite frank about this. The VA could have put in a system where it would take every report that came in and examine it on a case-by-case basis and determine whether that particular physician has the qualifications that are set forth in that directive. So you're just essentially saying that you think the VA doctors are better at assessing the credibility of the veteran when they claim that they experienced the stressor? That's certainly one part of it, Your Honor. In other words, this Court is aware. I've had these cases that there are cases of fraud where these claims are just made up. Most of the veterans' claims are not. They're totally legitimate. Well, the diagnosis – I'm sorry, go ahead. The whole differential diagnosis of PTSD assumes that a determination is made, a clinical medical determination is made as to the reliability of the claimed stressor and the extent of the claimed stressor. For the diagnosis of PTSD, Your Honor. So any doctor would have to do that. That's right. However, remember under the regulation, under F, that's only one part. Just because you have PTSD, you're not entitled to service connection. You have to also have, under F, corroboration of the claimed stressor. And all F3 is doing is providing an alternative way to establish that corroboration of the stressor. And it's saying here that we're not going to allow this private evidence, we're not going to make you go through the difficult step of finding corroborating evidence. We're going to allow you an alternative way to do this. But to do that, we want somebody with forensic training. You're saying an alternative way to do it is to say that our doctors are better able to assess fraud than private doctors? They're trained to do it. They have forensic training. Now, the point I was making with the private doctors is there are some, and there's 210,000 out there, that are probably equal and maybe even better than some of the VA doctors doing that. But there are plenty who are not. And VA rationally here said because we're basically providing an alternative method to corroborate a stressor, we want people who we have confidence in, who we can be assured that, in fact, that stressor occurred. And that's where this training comes in. Is there new training for the VA doctors under the regulation? I'm sorry, Your Honor? Is there new training provided for the doctors under the regulation? New training? Yes. Yeah, well, this is a 2008 document which established this training. Under the regulation, are you now providing new training to the VA doctors? Oh, absolutely. I mean, it's in place now. That's different from what was in place before? It was established in 2008, this particular program, and it's improving all the time. Excuse me. So the training that you're providing to your doctors is the same that existed prior to the implementation or the elaboration of this new rule? Well, the new rule came into effect in July of 2010, and the program was in effect prior to July 2010. So in the training, you don't have enhanced training now under the new rule? As compared to the year before, no. As compared to five years before, yes, it is enhanced training because the program has gotten better and better as VA has learned about these particular problems that they have and the forensic training that they have. How do you define forensic evaluation in these circumstances? It's legal. It's basically a legal determination. You're meeting here a legal element of a stated criteria for service connection. Now, there is forensic training out there, and the petitioners, they're available too, but it's very general in nature. The VA is very specific to PTSD in a combat setting, meeting the specific criteria set forth in, really, Section 3.304F. You may have PTSD that's diagnosed out there for workers' compensation statutes, either the federal under the Longshoremen's and Harbor Workers' Compensation Act or states. Right. These private doctors do this all the time, don't they? Right. Some of them do. Some of them don't. But this is specifically geared toward PTSD in a combat setting and specifically geared toward veterans' benefits. So it's a very precise training. And again, we're not claiming that there's no doctors out there who have equivalent training. It's a matter of basically determining who is and who isn't, and VA rationally chose here. Why not just set up a regulation that says that any doctor who can establish that they've had sufficient forensic training can be qualified? Your Honor, that is something the VA could have done, and if the VA had done that, I think that would also be rational. It elected not to, and it elected not to in large part because of the administrative burden that would cost. There are thousands of these. What kind of training then, when you talk about the administrative burden, you say that there was training since this 2008 directive. What form did it take? Did you have a mass convention of all VA doctors to come together and sit in a classroom or one-on-one explanation? Or you said, was it sent out in the mail and said, here's a new directive, read it?  I mean, there's, as I understand it, a classroom setting. There are tests that are given. There are modules that are given. There are tests that are given. Are there classrooms? You actually bring the VA physicians together in a classroom and go through this with them? That's my understanding, yes. And there's a certification. They have to certify that they've understood the modules that they've gone through. And this training you're describing is ongoing. I mean, this has been going on for years and years. No, Your Honor. This directive went into effect in 2008. Yeah, I'm looking at it. And you pointed it to us. Now, do you have a new directive that you've issued subsequent to the new rule that imposes heightened training for VA doctors since you've singled them out in the manner that the regulation has? I'm not aware of any such directive since July of 2010, Your Honor, no. So really, at one time, the VA doctor was equated with the non-VA doctor, and the regulation really hasn't done anything to raise the quality of the VA doctor to issue these type of opinions. F3 requires a specialization, a forensic specialization, that was not previously required in any other regulation. And that's why it's so important. The VA could have, if they wanted to, required any doctor under F to have, you know, only a VA doctor could confirm that. In its discretion, it elected not to. Why did it elect not to? Or allowed any of them to come in for this training, right? It could have done that. Or done it on a correspondence course basis. And the certification. The certification and they go through the modules and all that. There's plenty of alternatives that could have been done. This was the one that VA chose to allow it to have the confidence and the assurance that, in fact, that stressor occurred. And under this court's deferential standard, we believe that the court should deny the petition for review and find the regulation valid. I see that my time is up. Thank you. Any more questions for Mr. Austin? Thank you. Thank you, Mr. Tennant. And we've run over, Christina, so would you add maybe five minutes? Thank you, Your Honor. In terms of forensic psychiatry and the whole concept that the VA is suggesting, that there's something unique, that there is a forensic element that's legal, that isn't present in what board-certified psychiatrists and psychologists do when it comes to workers' compensation evaluations. I mean, it just doesn't hold because these doctors all the time are dealing with, is this person malingering? There's a financial incentive, whether you're a firefighter or a police officer, whether you're looking for workers' comp benefits just for short-term or for long-term disability. And the doctor in private practice who is dealing with that population is obligated to undertake, in a C&P, compensation and pension evaluation, the kind of forensic evaluation that the government is suggesting. But by fairness, there are doctors who specialize in different kinds of forensic evaluations. So you do have doctors who do mostly workers' comp analyses. In this instance, the VA is arguing that this is a very specialized area that has to do with fear of military hostilities. And that because they're giving this, a break to this class of veterans, that they need to make sure that this specialized knowledge exists. Right. That's their position. The Mental Health America amicus brief makes clear that the kind of relative advantage that the VA is saying its VA examiners have relative to private examiners is not based in fact. There's no data. There's no support for it. It's the say-so. And in fact, the amicus brief indicates that the board-certified psychologists and psychiatrists have guides from the APA and the AALP, I think it is, that basically direct them to undertake the kind of forensic evaluation and even have components to deal with veteran populations. And we know, for example, in a place like D.C., there are going to be private psychiatrists and psychologists who have substantial veterans' practices. And these are the same people who for years and years have been viewed by the VA as competent medical providers, as people who are able to do everything under the sun in terms of evaluating veterans for disability benefits. And you're now saying, well, no, all of a sudden we're going to reduce under this liberalizing rule, we're going to cut out all of these people that we've otherwise accepted. And the concept that there would be an administrative burden. Well, does it go that far or are you overstating it? Because they do talk about their VA physician consultants who I gather would be then on the VA's side of this analysis. I heard you tell us that all of the physicians who had previously been doing work for the VA would no longer be accepted. Well, I mean, unless they are on staff, unless they're contracted with the VA or hired by the VA, if you're in private practice and under F3, your opinion has no value. It's not considered because you're not a VA examiner. Let me ask you a hypothetical. Would you think that under 5125, where you have a private physician diagnosing PTSD, that the regulations would then allow for a VA doctor to solely consider the forensic component? I think that's what they're arguing, is that the VA examiner gets to drill down to that forensic component out of this whole world of other things. But I mean, first, that examiner would then be in a position of just accepting the diagnosis from the private physician and then only be addressing the other component. Do you see that as a possibility under the regulations or do you read the regulation as saying that all aspects of the diagnosis must be done by a VA doctor? My understanding is that if you're talking about the corroboration element, that what is normally within the purview and bailiwick of the board-certified psychiatrist and psychologist to actually determine the credibility of the account, the statement of the patient, the veteran, to actually look at the whole picture to say, yes, I believe that this stressor occurred and that I believe the current symptoms are related to it and it's the kind of stressor that could cause this kind of disorder. All of that just basically gets shunted aside with the claim of the VA that only the VA examiner gets to look at that stressor determination to determine whether it really occurred and is sufficient. So given that the VA physicians do undergo additional training or new training, why doesn't that make the rule rational? I don't think there's any training that the VA has put into place since 2008 that does anything to give them any type of advantage over private board-certified psychologists and psychiatrists. The amici brief really gives the perspective on how private doctors are doing the work and it would be our position that certainly the servicemen and women of this country deserve access to that type of quality medical care and it shouldn't be just shunted aside because of the VA's stated justifications, which we believe are really a pretext that they are very concerned about the number of PTSD claims that are out there and they want to be able to manage their exposure and managing their exposure is not what veterans who have this debilitating condition deserve. Okay, any more questions? Thank you. Thank you all and thank you Mr. Austin. The case is taken into submission.